Please call the last case of the afternoon. 416-1859, Davis-Hedlund v. Billingsville Com'n Estate Counsel, you may proceed. Good afternoon, Mr. Court. Good afternoon, Your Honors. Good afternoon, Counsel. My name is Nick Jarrett from Ryan Bonservant Accusation and I represent the Plaintiff Appellant, Mr. James Kanaga. The issue before the Court here today, the request that we are asking from this Court is to overturn the Workers' Compensation Commission decision finding that Mr. Kanaga's injury did not arise out of the course of his employment. I want to ask you a special question on the theory. The Commission's opinion did not mention a traveling employee theory at all. They applied a conventional theory that this was a fall from a neutral risk, correct? That is correct, Your Honor. And as part of the request that we are asking here today is to find that Mr. Kanaga was a traveling employee or that they err in not finding so based on the facts and what the arbitrator decided at the lower level. If the Court would not like a brief recitation of the facts. I don't think we need that. I mean, this is a police officer, okay? He was going to court to testify. Correct. Is anybody disputing that he wasn't required to go to court to testify? There are no disputes in the facts on the record, Your Honor. Okay. All right, so tell us why he is a traveling employee and cover it under that doctrine. In this case, Your Honor, Mr. Kanaga is a traveling employee and I base this argument off of previous holdings such as in the case Curtis that this Court decided on. As you may all know, in that case, the plaintiff was a traveling employee as a bank manager who went from two different branches of the bank. On the day of his accident, he arrived and he parked at the bank in St. Charles. When he parked there, he arrived at the bank in a parking lot that was not assigned by the employer. It was an open public parking lot that he actually testified to that he parked there on multiple occasions. That was his habit. As he was leaving and walking to the office, he avoided a car, something to a pothole, hurt himself. The Court found in that case that he was a traveling employee. I think that Mr. Kanaga's argument or our argument is that I'm not arguing just that his traveling employee status is because he's a police officer. I would like to look at the entire scope of his job and what he was doing on that particular day. Oh, yeah, we need to stay away from that because he was not hurt on routine patrol. The issue is whether or not he's a traveling employee going to court at the behest of his employer. That is correct, Your Honor. I think it at least should be acknowledged that his job as part of those duties, just as the bank supervisor, I think the Court would agree, he didn't get hurt driving his car on the way to the bank. He had already arrived. That's part of his argument that he was a traveling employee, at least in that case, and that's part of the argument here. But I do think he was required to travel the streets during his employment. He issues tickets. He's the only one who can testify for those dates. He arrives. It was in the record that he testifies at a minimum three times a month at the woman's courthouse, and he testifies there 90% to 99% of the time when he testifies at all. Is your argument that if the Court were to find that he was a traveling employee at the time, that it is irrelevant as to how his fault occurred such that we don't look at all at what would be the typical neutral risk analysis as to whether or not there was some quantitative aspect to it that he traversed the steps frequently, or there was a qualitative aspect to it, that there was a defect or he was holding files or something of that sort, simply because he's a traveling employee, because he fell on the stairs, that necessitates finding that it's impossible? I do believe that it is reasonable to foresee it. Therefore, I think that as a traveling employee going down that route, that we could take that perspective. He doesn't have to prove a specific defect in a neutral risk analysis. I do not believe he does, Your Honor. And I think, as you know, you've seen the records. You know that in the lower court, they did a Bill of Rights and Bill of Park analysis or the neutral risk analysis in this case. Finding that he was a traveling employee and going along the route, I think it's Curtis that says you need to change the analysis. It's not a rising argument. Of course, it's the conduct that he was undertaking is reasonable and foreseeable by the employer. My argument is that it was reasonable for him to park in the same parking garage that he parks in every time. There was no other parking at that courthouse. It is also reasonable that he would use those stairs that he uses every time he went in. There was nothing in the facts that said he was being unreasonable. He didn't slide down a railing. He didn't do anything unreasonable. I think it's foreseeable that he would be going up and down those same stairs. He wore his uniform. He was allowed to park in that specific area in that garage. I think that's reasonable and foreseeable under the law. In the event that we were to agree with you that he was a traveling employee and reversed the commission on the issue of failing to prove that his injury arose out of his employment, what then do we do with the case? At that point in time, I think you could affirm or, I guess, reverse or reinstate the opinion of the decision of the arbitrator. But the commission never ruled on the permanency, never ruled on the TTD, never ruled on the medical expenses. Correct. So the only remedy would be to reverse them based on what they decided and send it back and tell them to do it again with a finding that he's a traveling employee and that his injury arose out of the course of his employment. Correct. They've got to review the rest of this. Correct. They have to review the medical evidence, the appropriate TTD, and the permanency at the time, which he did previously testify to. Going back, as you were asking before, about qualitative and quantitative analysis, I did cite to another case, Need, which straight or kind of forked away from Curtis in a little bit of its analysis in this respect. Need was a traveling employee. He was a city inspector for the sewers in Chicago, commercial, residential areas. He was traversing a curb. He hurt his knee. I believe it says in that decision that he could not recall any specifics about the curb that he tripped on. And the court even pointed out that there was no reasonable argument that traversing a curb was neither reasonable nor foreseeable. In that case, the court went on further and then did a qualitative analysis. Actually, it skipped the qualitative analysis because he was a traveling employee. Let's put it that way. Because he was a traveling employee, the qualitative or the quantity that he had to do that because he was a traveling employee exposed him to that risk more often than not. That's where the rub comes in between Curtis, which the decision in Curtis says because we find that they're a traveling employee and it's reasonable and foreseeable, the court did not need to do a qualitative analysis of the. That's the old street risk doctrine. Say that again. That's the old street risk doctrine. If he's a traveling employee, he's exposed to the risks of being in the street and the general public, he gets to recover if he's injured. Correct, Your Honor. I believe that's the case for Mr. Kaneda. Finally, even if the court were to re-rebuild the Willow Park, I still think there's an argument for the amount of times that he goes to that particular courthouse and testifies. He does it a fair amount, 98% to 99% of the time. He wears his uniform. He parks in a specific lot for police officers and gives him that benefit. I think the court could still agree that that is part of the analysis and that he meets that burden. Meets what burden? The idea that he goes up and down those stairs enough times that it's putting him at a greater risk than the general public would be because of the amount of times that he testifies. That's your fallback argument. Correct, Your Honor. That is my fallback argument. Does the court desire any questions at this time? I don't believe we do. Thank you, Counsel. Thank you. Counsel, you may respond. Thank you. Good afternoon, Your Honors. Counsel, my name is Paul Schumacher, and I'm here on behalf of the Bill of Jehovah of States. It is the respondent's position that the commission's decision as well as the decision and the order of the Circuit Court of Cook County should be affirmed. I think there's enough evidence to support the claimant's accident did not arise out of the employment. How is that possible? He's a police officer. When he goes to testify, is he not going there in furtherance of the employer's need, the village needs to a location that is not the usual place of employment? Is he there on a personal errand when he goes to testify at the courthouse? No. What I'm suggesting to you, sir, is that, first of all, we're going to go back to count 101, and I mean this with due respect. Don't take it the wrong way. If an accident has to arise out of it in the course of employment, he did go to the courthouse and needs to go approximately three times a month to the courthouse to testify, which is part of his job duties. Okay. The fact remains that he did go there. He was not reimbursed for the travel there. He parked in the only parking lot that's available for that particular courthouse, if you've been there. On his way out, he tripped over his own feet. It has to arise out of it in the course of it. Tripping over your own feet does not arise out of it. And if he's a traveling employee, he still has to be in more than neutral risk. He can't recover if he's a traveling employee. He also has to be free from contributory negligence. Is that your position? No. That's not count 101. That's count 101. There is no contributory negligence. That's correct. However, it must be associated with the employment. There must be some risk inherent. Counsel raised the issue that he traverses the stairs. Yes, when he goes there, he goes up and he goes down or he goes up and he goes down. That in itself does not make an increased risk. And most importantly, we do not believe that he's a traveling employee because three times out of the month, he has to go to the courthouse, which is part of his job. Well, what's your definition of traveling employee? He's going to the courthouse in furtherance of the employer's business. He's not going there on a personal errand. Okay? True. You saw the Curtis case. Okay? I mean, that, I think, is not going to be your winning argument. But is it your position, and obviously this is maybe the undecided issue, is that if he's a traveling employee and he's injured while in the course of traveling, which I think this case qualifies, there has to be an additional risk. He can't recover unless there's some type of specific defect. Is that what you're saying? Yes. If he trips over his own feet, traveling employee or not, he doesn't recover. Yes. Tripping over your own feet, argument, yes, is a foreseeable, yes, is a reasonable. But where do we draw the line, sirs? There has to be some associated risk with the employer. It has to be reasonable, and it has to be foreseeable. Let me give you this example. I'm not saying your argument doesn't have any intuitive appeal. Somebody is a traveling employee, admittedly. They're driving in bad weather. They're going too fast, and they go off the road, do their own negligence. They can't recover? No, they could recover. Why can't he recover? I think where we have to draw the distinction is in using your scenario, the individual is driving to or from while he is traveling. In this instance, he's traversing steps, stairs, which is at no greater risk. We do that on a daily basis hundreds if not thousands of times. People drive down the road hundreds of times. Everybody drives in bad weather, don't they? All I can say is I think there's a distinction when you trip over your own feet. Well, counsel, maybe to make your point, let's put this in the context of an accident at the police station. Let's say it's during the course of his workday. He's in uniform. He's walking from one floor to another at the police station, traversing stairs, not carrying anything, no evidence of a defect in the stairs. He does exactly what he did here. He misses a step and falls. I think based on the case law there, that would be a non-compensable neutral risk, given the way the cases come out on that. So you might then ask, well, why, if he is a traveling employee, does it transform a non-compensable risk into a compensable risk? I concur. I concur. I concur.  Can I ask you a question? Counsel, you made a statement before, and I'm looking for it in the record. Where does the commission say he tripped on his feet? It's in the cross-examination. Oh, but it's not in the commission's decision. They didn't find he tripped on his feet, did they? They just found that he fell down the stairs as he was traversing. They said he missed a step. He missed a step. But they didn't say he tripped on his own feet. No, but the record is in the plea for petition to specifically respond to my question that he tripped over his own feet. The medical records also indicate that he misstepped. Misstepping is different than tripping on your own feet. I understood. With the cross-examination, he said yes. I asked him, is it so safe to say that, and I'm paraphrasing, forgive me, that you tripped on your own feet? Yes. I have a site in the record where he specifically said it, if I could find it. It may take me a moment. But it is in the cross-examination section. He specifically stated he tripped over his own feet. And I think that's the distinction. Now, using Justice Harris's example, if he were going up and down the stairs on a daily basis similar to the police officer in the village of Noble Park, if he were carrying things, if he was rushed, if he was something along those lines, now there's an increased risk. But were you tripping over your own feet? I'm sorry. We're getting away from the issue. I happen to agree with you because the person in the examples that are being cited is clearly not a traveling employee. You can go up and down stairs a thousand times. You're never going to be a traveling employee. That's going away from your assigned workplace. So the question still is, do you have any case law to say that there has to be some specific defect causing the injury where you have a traveling employee situation? You need a traveling employee plus a defect. Okay. Well, first of all, once again, with due respect, I don't believe that he is a traveling employee. Well, let's assume that we find he is. Okay. Hypothetically, we find that. All right. So does he need to establish a defect? I think it is. Yes, he does. Because when you look at the, I think it's the knee or the knees case, he tripped over a curb. There was reference in that decision about the height of the curb with respect to the level of the sidewalk or the step. In other cases, there are specific things that occur that show, quote, a defect or something that makes it unusual, something that's not ordinary. Are you assigning to me traveling employee cases or just your general theory of most capital cases? You're not answering the question. I'm sorry. If we find he's a traveling employee. Yes. And he falls down, does he need to show something beyond that? I believe he does. And is there a case law that says that, can you satisfy a case law that says in a traveling employee case. No, I cannot. I cannot. Okay. I cannot. Again, it's our position that, first of all, once again, I'm kicking a dead horse here, and forgive me, I do not believe that the petitioner is a traveling employee, and even if he is, it has to arise out of the course of employment, and I think what took place on those stairs did not arise out of the employment. I would ask you to please affirm the current decision. Thank you. Thank you, counsel. Counsel, you may reply. May I please report? Can you answer that question? Your Honor, arising out of the course of employment is not the analysis when someone is considered a traveling employee. It's not. The analysis is a reasonable, foreseeable, that's what the Curtis court said. Curtis, by chance, happened to step in a pot hole, but that was not part of the holding in the decision. They did not stress that factor. Indeed, he trips on the curb. It does not say that the curb has a defect. They didn't reflect on that. What is a stair by a stack of curbs is what I'm saying. So if he's a traveling employee and it's reasonable and foreseeable that he may get injured doing something, that should be enough. You don't have to show an additional defect. Is that your position? That is my position, Your Honor. Is this a case of first impression in Illinois? It could be a case of first impression, Your Honor. I don't understand what I have over there. There are other facts. I agree with the court that there are things about defects. I agree with Mr. Schumacher on that point, but those are not the issues in those cases and those do not get brought up. So really, conceptually, if you're classified as a traveling employee, it's positional risk? No, I don't believe so, Your Honor. What saves it from being positional risk? Well, the case law says it has to be what he's doing is reasonable and foreseeable. I guess positional risk would be what position is he in at the same time. I thought that the Knee case was familiar. I wrote it. I'm sorry. I said I thought the Knee case was familiar. I wrote it. In Knee, this was a building inspector, a plumbing inspector, and he tripped on a curb. And we turned around and said, you know, everybody is exposed to the dangers of tripping and falling on a curb, except this man was a traveling employee. And when he's a traveling employee, he's exposed to the risk while working and is presumed to have been exposed to a risk greater than the general public. That's right. And so there's dangers in climbing stairs. We're all exposed to it. But when you're a traveling employee, I guess we've got to be presumed to be exposed to a degree greater than the general public when we're forced to do it. And in my analysis and research of the case law, you can see the conflict between Curtis and that case in that Curtis says verbatim that we do not need to get into the analysis of quantitative risk in that case, but yet Knee laid it aside and says so. Yes, exactly. The status tells you the analysis. Once you classify status as traveling, then you have an analysis framework. You're correct, Your Honor. I ask this Court to reverse the decision regarding him rising up and, of course, the employment. I thank you all for your time. Thank you, counsel, both for your arguments this afternoon. It will be taken under advisement and written disposition until issued. The court will stand on recess until 9 a.m. tomorrow morning. Thank you, Your Honor. Thank you.